

Littler Mendelson, PC
290 Broadhollow Road
Suite 305
Melville, NY 11747

May 15, 2015

Lisa M. Griffith
631.247.4709 direct
631.247.4700 main
631.850.5363 fax
lgriffith@littler.com

**VIA ECF**

Magistrate Judge Steven I. Locke
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re: Caputi v. Topper Realty Corp., et al.
Civil Action No. 14-cv-02634 (JFB)(SIL)

Dear Magistrate Judge Locke:

This firm represents the Defendants in the above-referenced action. Defendants submit this letter in support of their motion to compel Plaintiff to produce a diary/notebook containing her handwritten notes regarding her claims in this case. I have met and conferred with Plaintiff's counsel via e-mail and telephone and he advised me that he will not produce the diary/notebook. Defendants also request an additional day to depose Plaintiff, and other relief set forth below.

**I. DEFENDANTS' DOCUMENT REQUEST AND PLAINTIFF'S RESPONSE**

Defendants served Plaintiff with document requests, dated September 30, 2014. Document Request Number 6 sought "All letters, notes, diaries, calendars, memoranda or other formal or informal documents prepared by you personally or on your behalf relating to or referring to the claims asserted in the Complaint." (*See* Exhibit A). Plaintiff responded without objecting on the grounds of privilege, and referred Defendant to document Bates No. Caputi000008, which is a one-page e-mail Plaintiff sent to the Defendants. (*Id.*)

**II. PLAINTIFF'S DEPOSITION TESTIMONY**

At Plaintiff's deposition on April 30, 2015, Plaintiff was asked the following questions and gave the following answers:

> **Q:** Did you produce to the defendants all of the documents that you have in your possession relating to this case?
> **A:** Yes.
> **Q:** Do you have any handwritten notes or a journal or a diary?
> **A:** Originally, yes, there was one. It's with the firm.
> **Q:** What firm?
> **A:** Borelli & Associates.
> **Ms. Griffith**: You didn't produce that?
> **Mr. Veytsman**: I do not have that. What I'm told is, is that this was given to the prior attorney in this case and I have gone through all the files in the office, there is nothing even remotely similar to a diary in our files.

> Q: With regard to this diary – that is that it was? A diary?
> A: It was in my words and the calculations of the events with the copies of the e-mails that went with it.
> Q: When did you create that document?
> A: When I was told in the very beginning when all of this stuff was going on that I should keep a record, and I lost most of what I had, so I was just writing everything down. Like I had most of the paperwork, but I started to write it down and that – I don't know. When I first hired the attorney.
> Q: Who told you to keep a record?
> A: In the past to keep a record of everything?
> Q: What provoked you to start keeping a diary?
> A: My present boyfriend at the time was a Long Beach police officer and he told me to start documenting everything that was going on in the office.
> Q: And then you gave that to your attorney, correct?
> A: Uh-hum.
> Q: You do not have a copy of it?
> A: No.
> Q: Do you remember which attorney you gave it to?
> A: Alexandra Robbins.
>                  ...
> Q: Did you, in that diary that you mentioned, did you keep a chronology of when events occurred so in that diary it might include when Fred made the comments to you or when you had a meeting with Joan or when Diane said something or when Brian said something?
> A: It might. I mean, it was so – it may have the dates. It may have the actual. I don't have a copy of this one – I don't have a copy of this.
> Q: But I was just wondering if you might have recorded the other conversations with the Toppers or with Diane and Joan and Fred?
> A: I don't know how much of everything I do have or don't have.
> Q: But it's possible you might have written down some of these things?
> A: Yeah, it's possible. (*See* Exhibit B, Caputi Dep. pp. 10-13, 211-212).

## III. PLAINTIFF REFUSES TO PRODUCE THE DIARY/NOTEBOOK

On May 1, 2015, Mr. Veytsman sent me an e-mail stating that he located the diary and discussed it with his client and that the document is a "narrative Ms. Caputi created at the request of her attorney and thus, it is privileged and will not be produced." (*See* Exhibit C). Upon receipt of the transcript on May 13, 2015, I sent Mr. Veytsman an e-mail with the relevant transcript pages and advised him that his position is contrary to Ms. Caputi's testimony, and demanded production of the notebook. (*See* Exhibit D). Mr. Veytsman responded that he spoke with Plaintiff's previous attorney and Ms. Caputi and they both told him that the notebook was created at the behest of counsel, and that the materials she maintained at the advice of her boyfriend were lost during Hurricane Sandy, although admitting there is an inconsistency between this and her deposition testimony. (*See* Exhibit D). This explanation is incredulous for many reasons, amongst them that it is contrary to Plaintiff's sworn testimony, Plaintiff testified she wrote it down because she had lost most of the documents she had, Plaintiff was terminated **one year** after Hurricane Sandy, the issues with her managers arose after Hurricane Sandy, and the issue with her pay arose in October of 2013. If there was a separate notebook but it is now missing, Plaintiff should be sanctioned for spoliation of evidence.

## IV. THE DIARY/NOTEBOOK IS RELEVANT, NOT PRIVILEGED, AND MUST BE PRODUCED

There is no question that the contents of the diary/notebook are relevant to the claims and defenses in this case. Plaintiff testified that she made the entries at the direction of her boyfriend, not at the direction of counsel. She did not qualify her response or hedge at all. Mr. Veytsman's assertion that Ms. Caputi made the entries in the notebook at the direction of counsel is completely without merit and completely in contradiction to Ms. Caputi's unwavering sworn testimony. It is also suspect for the reasons explained above. Plaintiff did not produce a privilege log regarding the diary/notebook or assert an objection based on privilege in her response to Defendants' document demands, and therefore, she waived the objection. Moreover, this omission calls into question the notion that the notebook could possibly be privileged. Accordingly, Defendants request that the Court direct Plaintiff to produce the diary/notebook in its entirety.

## V. REQUEST FOR A SECOND DAY TO DEPOSE MS. CAPUTI AND OTHER RELIEF

Defendants respectfully request that the Court grant them the opportunity to depose Ms. Caputi for an additional day, prior to the Plaintiff taking depositions of the Defendants. Should the Court require the production of the diary/notebook, Defendants need to question her about the content. Should the Court not allow production, Defendants need to question Plaintiff about her inconsistencies. In addition, there were several additional documents that were requested prior to Plaintiff's deposition but not produced, including HIPAA releases for Plaintiff's medical records. Plaintiff is claiming emotional distress damages due to her termination and thus these records are relevant. Plaintiff signed three HIPAA releases at her deposition, but limited it to doctors who treated her for emotional distress due to her termination. However, Plaintiff testified that she lost her home in Hurricane Sandy, was displaced for a while, and that she has always had anxiety. Thus, Defendants are entitled to view her medical records for treatment she received prior to her termination in order to ascertain whether her anxiety is the result of some factor other than her termination. Plaintiff also testified that she has other documents on her home computer, such as Word and Excel documents, which were not produced. In addition, Plaintiff testified that she did not produce documents relating to her mitigation efforts, such as job postings and interviews. Defendants need to question Plaintiff about all of these documents.

Finally, Defendants request that the Court award them costs and attorneys' fees with regard to making this motion and taking Plaintiff's deposition on another day. Defendants also request that the Court direct Plaintiff to pay for the stenographer for the additional day of Plaintiff's deposition, which is necessitated only by Plaintiff's and/or her attorneys' failure to produce relevant documents which were requested by Defendants, and for any other such relief the Court deems just and proper.

Respectfully submitted,

LITTLER MENDELSON, P.C.

*/s/Lisa M. Griffith*


cc: Samuel Veytsman, Esq. (Via ECF)
Encl.

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOREEN CAPUTI,

                                                                                   Docket No.: 14-CV-02634
                                                                                    (LDW) (SIL)

                           Plaintiff,

       -against-

TOPPER REALTY CORP., and BRIAN TOPPER,
MARILYN TOPPER, SHARON TOPEER, in their
Individual and professional capacities,

                           Defendants.
----------------------------------------------------------------X

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF

       Plaintiff, Doreen Caputi, by and through her counsel, sets forth her responses and objections to Defendants' First Request for the Production of Documents Directed to Plaintiff, as follows:

### RESERVATION OF RIGHTS

       These objections and responses are based upon information and documents known to Plaintiff at the present time. Plaintiff will supplement or amend these responses in the event that she discovers additional documents or information that require such supplementation or amendment. Should Plaintiff at any time supplement or amend her responses to any Document Request, by agreement or otherwise, Plaintiff reserves the right to assert any applicable objection, privilege or other protection in connection with such supplementation or amendment.

       Plaintiff's responses do not include information or documents that are privileged or protected work-product. If any document that is privileged or protected work-product is disclosed inadvertently in response to any Document Request, such disclosure does not waive, and is not to be construed as a waiver of, the attorney-client privilege, work-product protection or any other privilege or protection.

       Further, Plaintiff's responses are made subject to Plaintiff's right to object to the admission

1

**Response to Document Request No. 5:** Plaintiff refers Defendants to Documents Bates Nos. Caputi000001 through Caputi000008.

**Document Request No. 6:** All letters, notes, diaries, calendars, memoranda or other formal or informal documents prepared by you personally or on your behalf relating to or referring to the claims asserted in the Complaint.

**Response to Document Request No. 6:** Plaintiff refers Defendants to Document Bates No. Caputi000008.

**Document Request No. 7:** All documents concerning communications between you and any other individual which discusses, references, or relates to the subject matter of the Complaint.

**Response to Document Request No. 7:** Plaintiff objects on the grounds that this request is overly broad, as it seeks "all documents" between Plaintiff and any other individual, without being limited in scope, and fails to designate with reasonable particularity the documents sought. Notwithstanding the foregoing objection, Plaintiff refers Defendants to Documents Bates Nos. Caputi000001 through Caputi000008.

**Document Request No. 8:** All diaries, calendars, day planners, personal notes, time cards, time records, time logs, schedules, time records or other records of activity prepared by or for you during the entire period of your employment with any Defendant, including any documents that contain information regarding the number of hours (including alleged overtime hours) or days you actually worked or claimed to have worked during any work week while employed with any Defendant.

**Response to Document Request No. 8:** Plaintiff refers Defendants to Documents Bates Nos. Caputi000001through Caputi000004, Caputi0000008.

**Document Request No. 9:** Any and all documents that you contend relate to Defendants' alleged willful failure to compensate you in accordance with applicable law.

**Response to Document Request No. 9:** Plaintiff refers Defendants to Bates Nos. Caputi00001 through Caputi000036.

**Document Request No. 10:** All documents concerning the allegations set forth in paragraph "19" of the Complaint that "Plaintiff occasionally asked the Defendants to pay her overtime pay for, at minimum, eight overtime hours that she always worked over forty in a week" and that Defendants "always told Plaintiff she was not eligible for overtime pay."

5

# EXHIBIT B

```
 1                    Doreen Caputi
 2        Q    Did you produce to the defendants
 3   all of the documents that you have in your
 4   possession relating to this case?
 5        A    Yes.
 6        Q    Do you have any handwritten notes or
 7   a journal or diary?
 8        A    Originally, yes, there was one.
 9   It's with the firm.
10        Q    What firm?
11        A    Borrelli & Associates.
12             MS. GRIFFITH:  You didn't produce
13        that?
14             MR. VEYTSMAN:  I do not have that.
15        What I'm told is, is that this was
16        given to the prior attorney in this case
17        and I have gone through all the files in
18        the office, there is nothing even
19        remotely similar to a diary in our
20        files.
21   BY MS. GRIFFITH:
22        Q    With regard to this diary -- that is
23   what it was?  A diary?
24        A    It was in my words and the
25   calculations of the events with the copies of the
```

Doreen Caputi

2  e-mails that went with it.
3          Q     When did you create that document?
4          A     When I was told in the very
5  beginning when all of this stuff was going on that
6  I should keep a record, and I lost most of what I
7  had, so I was just writing everything down.  Like
8  I had most of the paperwork, but I started to
9  write it down and that -- I don't know.  When I
10 first hired the attorney.
11         Q     Who told you to keep a record?
12         A     In the past to keep a record of
13 everything?
14         Q     What provoked you to start keeping a
15 diary?
16         A     My present boyfriend at the time was
17 a Long Beach police officer and he told me to
18 start documenting everything that was going on in
19 the office.
20         Q     And then you gave that to your
21 attorney, correct?
22         A     Uh-hum.
23         Q     You don't have a copy of it?
24         A     No.
25         Q     Do you remember which attorney you



```
                                                      12
 1                      Doreen Caputi
 2    gave it to?
 3          A     Alexandra Robbins.
 4              MS. GRIFFITH:  Can you just go off
 5          the record, please?
 6              (Whereupon, a recess was taken
 7          from 10:41 a.m. to 10:43 a.m.)
 8              MS. GRIFFITH:  Back on.
 9    D O R E E N   C A P U T I,
10          called as a witness,
11          having been previously sworn/affirmed,
12          was examined and testified further:
13    BY MS. GRIFFITH:
14          Q     Was the diary handwritten, or did
15    you have electronic typewritten pages, or how did
16    you create it?
17          A     It was handwritten.  Ninety percent
18    of it was handwritten and there was the -- like,
19    this, as a printout, would be with it.  After it
20    was written out, if this was one of my pieces of
21    the puzzle, I placed it in it and it was all in a
22    book.
23          Q     What kind of book was it in?
24          A     It was in a composition book.
25          Q     Do you remember what color it was?
```

13

1         Doreen Caputi
2     A    It was, I believe, black and white.
3  I believe.  I'm not sure.
4     Q    Do you have any notes on your
5  computer or anything regarding this case?
6     A    Yes, I do have.  In the computer.
7     Q    Did you print them out and produce
8  them to us?
9     A    Now?
10    Q    Not today.  When you received the
11 request for documents --
12    A    Yes.  My attorney, then Alexandra,
13 and then Mindy Kallus had all these documents.
14 They also had access to my e-mail account and my
15 passwords to get all the information that they
16 wanted throughout my entire e-mail.  I saved
17 everything.
18    Q    And you created Word documents as
19 well?
20    A    Yeah, Word documents, Excel
21 program -- just -- the e-mails.  Some of them
22 were, like, interoffice.  Like, if I wrote Brian a
23 letter, it was Brian's response to me or their
24 nonresponse.  And those were in those documents.
25    Q    Is there any other documentation

                                                                  211
1                       Doreen Caputi
2      loud.  I apologize.
3              Q      Did you say there was another
4      e-mail?
5              A      It looks like the same e-mail that
6      you showed earlier.
7              Q      Do you want to look at the exhibits
8      and refresh your memory as to which one you are
9      referring to?  They are in front of you.
10             A      Maybe I just repeated something.  I
11     don't know.  Maybe not.
12             Q      Did you say no, it's not?
13             A      I may have just repeated something
14     in the letter that was said already.
15                    (Perusing document.) Yeah, I don't
16     know.
17             Q      What was the purpose of writing this
18     e-mail?
19             A      Like I said before, my boyfriend
20     told me to put them on notice of what's going on.
21     Just write a letter and e-mail it to him.
22             Q      Did you, in that diary that you
23     mentioned, did you keep a chronology of when
24     events occurred so in that diary it might include
25     when Fred made the comments to you or when you had

FINK & CARNEY
REPORTING AND VIDEO SERVICES
39 West 37th Street, 6th Floor, New York, N.Y. 10018  (212) 869-1500



```
 1                    Doreen Caputi
 2   a meeting with Joan or when Diane said something
 3   or when Brian said something?
 4          A     It might.  I mean, it was so -- it
 5   may have the dates.  It may have the actual.  I
 6   don't have a copy of this one -- I don't have a
 7   copy of this.
 8          Q     I'm sorry?
 9          A     I don't have a copy of this one.
10   This is through TRC.
11          Q     But I was just wondering if you
12   might have recorded the other conversations with
13   the Toppers or with Diane and Joan and Fred?
14          A     I don't know how much of everything
15   I do have or don't have.
16          Q     But it's possible you might have
17   written down some of these things?
18          A     Yeah, it's possible.
19          Q     Did you e-mail them to your
20   boyfriend?  Did you send an e-mail as to the
21   issues that were going on?
22          A     No, this I remember -- no, I didn't
23   tell him, like, the issues.  We discussed it and
24   he said, "You should put them on notice.  You
25   know, your bosses are attorneys and they would
```

# EXHIBIT C

## Griffith, Lisa M.

**From:** Samuel Veytsman <SVE@employmentlawyernewyork.com>
**Sent:** Friday, May 01, 2015 6:46 PM
**To:** Griffith, Lisa M.; Ng, William H.
**Subject:** RE: Caputi production

Lisa,

That is incorrect – Ms. Caputi testified that she wrote emails to the Toppers, not entries in the notebook, at the direction of her boyfriend. Given the apparent dispute over Ms. Caputi's testimony, I think it would make sense to obtain the transcript before contacting the court.

**From:** Griffith, Lisa M. [mailto:LGriffith@littler.com]
**Sent:** Friday, May 01, 2015 6:40 PM
**To:** Samuel Veytsman; Ng, William H.
**Subject:** RE: Caputi production

Sam,

That is not what she testified to. She testified that she wrote the entries in the notebook at the direction of her boyfriend, not at the direction of counsel. Being that your position is contrary to Ms. Caputi's sworn testimony, we will have to write to the Judge for intervention.

Best,
Lisa

Lisa M. Griffith, Shareholder
631.247.4709 direct   631.850.5363 fax   LGriffith@littler.com
290 Broadhollow Road, Suite 305 | Melville, NY 11747


| littler.com
Employment & Labor Law Solutions Worldwide

**From:** Samuel Veytsman [mailto:SVE@employmentlawyernewyork.com]
**Sent:** Friday, May 01, 2015 6:35 PM
**To:** Griffith, Lisa M.; Ng, William H.
**Subject:** Caputi production

As you know, Ms. Caputi testified yesterday that she gave a log or diary to her counsel. I have located the notebook Ms. Caputi is referring to and discussed it with her. This document is neither a log nor a diary. Rather it is a narrative Ms. Caputi created at the request of her prior attorney, Alexandra Robins, to aid Ms. Robins in drafting the complaint. As such, this document is clearly protected from disclosure under the attorney-client privilege. I have attached a privilege log reflecting this document.

Thank you.

Best Regards,

Samuel Veytsman, Esq.
Borrelli & Associates, P.L.L.C.

1

1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel. No. (516) 248-5550
Fax No. (516) 248-6027

----------------------------------------

655 Third Avenue, Suite 1821
New York, New York 10017
Tel. No. (212) 679-5000
Fax No. (212) 679-5005

www.employmentlawyernewyork.com
SVE@employmentlawyernewyork.com



Borrelli & Associates, P.L.L.C.

Note: The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney/client privilege or any other privilege. This e-mail message may not be forwarded without the prior written consent of Borrelli & Associates, P.L.L.C. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, conversion to hard copy, copying, reproduction, circulation, publication, dissemination or other use of, or taking of any action, or omission to take action, in reliance upon this communication by persons or entities other than the intended recipient is strictly prohibited. If you have received this communication in error, please (i) notify us immediately by telephone at (516)248-5550, and (ii)delete the message and any material attached thereto from any computer, disk drive, diskette, or other storage device or media. Thank you.

----

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

Doreen Caputi v. Topper Realty Corp., et al.
Privilege Log

| Date | Author | Recipients | Description | Privilege Asserted |
|---|---|---|---|---|
| Dec-13 | Caputi, Doreen | Borrelli & Associates | Notebook with narrative of Ms. Caputi's employment with Topper Realty, prepared at the request of counsel, for use in connection with drafting the Complaint in this matter. | Attorney-Client |

# EXHIBIT D

## Griffith, Lisa M.

**From:** Samuel Veytsman <SVE@employmentlawyernewyork.com>
**Sent:** Wednesday, May 13, 2015 4:01 PM
**To:** Griffith, Lisa M.
**Subject:** RE: Caputi v. Topper

I have spoken with Alexandra Robbins, who tells me she instructed Ms. Caputi to create the notebook. Ms. Caputi likewise tells me that the notebook in my possession at issue was created for, and at the behest of, counsel. Ms. Caputi further states that the materials she maintained at the advice of her boyfriend were lost during Hurricane Sandy. I am well aware there is an inconsistency between this and her deposition testimony, and I was not at the Firm during the relevant time period, but I cannot turn over a document which both my client and the former counsel in this matter tell me is privileged.

-----Original Message-----
From: Griffith, Lisa M. [mailto:LGriffith@littler.com]
Sent: Wednesday, May 13, 2015 3:45 PM
To: Samuel Veytsman
Subject: Caputi v. Topper

Dear Sam,

We received the transcript of Ms. Caputi's deposition today. See attached for relevant pages regarding the diary/notebook. Ms. Caputi was asked : Q: "What provoked you to start keeping a diary? A:"My present boyfriend at the time was a Long Beach police officer and he told me to start documenting everything that was going on in the office. Q: And then you gave that to your attorney? A: uh-hum. ... Q: Do you remember which attorney you gave it to? A: Alexandra Robbins."

Clearly the diary/notebook was not created at the direction of counsel, but at the direction of her boyfriend and given to her attorney. Thus, it is not privileged and we demand that it must be produced to us as soon as possible, and no later than Friday.

Best,
Lisa

Lisa M. Griffith, Shareholder
631.247.4709 Direct   631.850.5363 Fax   LGriffith@littler.com
290 Broadhollow Road, Suite 305, Melville, NY 11747

Littler Mendelson | littler.com
Employment & Labor Law Solutions Worldwide

-----Original Message-----
From: donotreply@littler.com [mailto:donotreply@littler.com]
Sent: Wednesday, May 13, 2015 3:51 PM
To: Griffith, Lisa M.
Subject: From Littler Mendelson

1

Please open the attached document. It was scanned and sent to you using a Xerox Multifunction Device.

Attachment File Type: pdf, Multi-Page

Multifunction Device Location: machine location not set
Device Name: XRX9C934E1C187F


Littler Mendelson Melville

----

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.