UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DOREEN CAPUTI,

                              Plaintiff,                **ORDER**

     -against-                             14-cv-2634(JFB)(SIL)

TOPPER REALTY CORP., and BRIAN
TOPPER, MARILYN TOPPER, and
SHARON TOPPER, in their individual and
professional capacities,

                             Defendants.
-------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

      Plaintiff Doreen Caputi ("Plaintiff" or "Caputi") commenced this action against Defendants Topper Realty Corp., Brian Topper, Marilyn Topper, and Sharon Topper (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Presently before the Court is a letter motion by Defendants, DE [37], seeking an Order: (i) compelling Plaintiff to produce a notebook that allegedly includes information concerning her claims in this action; (ii) compelling Plaintiff to provide authorizations for access to medical records that predate her termination; (iii) granting leave to continue Plaintiff's deposition on various topics; (iv) awarding Defendants costs and attorneys' fees incurred in making the instant motion; and (v) imposing a sanction on Plaintiff in the form of requiring her to pay the stenographer fees at her continued deposition, as well as any costs and attorneys' fees incurred by Defendants in taking it. Plaintiff submitted a letter in opposition, DE [28]. For the reasons set forth herein, the motion is granted in part and denied in part.

## I.      Background

Familiarity with the underlying facts of this case, which were discussed in detail in the Court's February 25, 2015 Order, DE [32], is presumed.  The following factual assertions regarding the discovery process are relevant here.

### A.      **Defendants' Request for Documents**

On or about September 30, 2014, Defendants served discovery demands on Plaintiff which sought, *inter alia*, "[a]ll letters, notes, diaries, calendars, memoranda or other formal or informal documents prepared by you personally or on your behalf relating to or referring to the claims asserted in the Complaint."  *See* Def.'s Ltr. Mtn., Ex. "A", DE [37] (Plaintiff's Responses and Objections to Defendants' First Request for the Production of Documents Directed to Plaintiff (hereinafter, the "Discovery Responses")), at No. 6.  Caputi did not assert any specific objection to this request, but incorporated a set of general objections which included an objection based on privilege.  *See id*.  Rather, Plaintiff responded by "refer[ring] Defendants to Document Bates No. Caputi000008."  *Id*.  Defendants contend that this document is an e-mail not directly relevant here.  *See* Def.'s Ltr. Mtn. at 1.

### B.      **Plaintiff's Deposition Testimony**

After receiving Plaintiff's Discovery Responses, Defendants deposed Caputi. As relevant here, the following exchange took place:

Q:      Do you have any handwritten notes or a journal or diary?
A:      Originally, yes, there was one.  It's with the firm.
Q:      What firm?
A:      Borelli & Associates.
Ms. Griffith [Defendants' Counsel]:      You didn't produce that?

Mr. Veytsman [Plaintiff's Counsel]:   I do not have that.  What I'm told is, is that this was given to the prior attorney in this case and I have gone through all the files in the office, there is nothing even remotely similar to a diary in our files.

BY MS. GRIFFITH:

Q:   With regard to this diary—that is what it was? A diary?

A:   It was in my words and the calculations of the events with the copies of the e-mails that went with it.

Q:   When did you create that document?

A:   When I was told in the very beginning when all of this stuff was going on that I should keep a record, and I lost most of what I had, so I was just writing everything down.  Like I had most of the paperwork, but I started to write it down and that—I don't know.  When I first hired the attorney.

Q:   What provoked you to start keeping a diary?

A:   My present boyfriend at the time was a Long Beach police officer and he told me to start documenting everything that was going on in the office.

Q:   And then you gave that to your attorney, correct?

A:   Uh-hum.

Q:   You don't have a copy of it?

A:   No.

Q:   Do you remember which attorney you gave it to?

A:   Alexandra Robbins.

Q:   Was the diary handwritten, or did you have electronic typewritten pages, or how did you create it?

A:   It was handwritten.  Ninety percent of it was handwritten and there was the—like, this, as a printout, would be with it.  After it was written out, if this was one of my pieces of the puzzle, I place it in it and it was all in a book.

[ . . . ]

Q:   Did you, in that diary you mentioned, did you keep a chronology of when events occurred so in that diary it might include when Fred made the comments to you or when you had a meeting with Joan or when Diane said something or when Brian said something?

A:   It might.  I mean, it was so—it may have the dates.  It may have the actual.  I don't have a copy of this one—I don't have a copy of this.

[ . . . ]

Q:   But I was just wondering if you might have recorded the other conversations with the Toppers or with Diane and Joan and Fred?

A:   I don't know how much of everything I do have or don't have.

Q:   But it's possible you might have written down some of these things?

A:   Yeah, it's possible.

Def.'s Ltr. Mtn., Ex. "B" (Relevant portions of Apr. 30, 2015 deposition of Doreen Caputi ("Pl. Dep.")).

### C.  Subsequent Dispute Over Plaintiff's Notebook

Following Caputi's deposition, Defendants demanded the production of the Notebook about which Caputi had testified.[1]  In response, Plaintiff's attorney wrote an e-mail to defense counsel stating, in relevant part:

> I have located the notebook Ms. Caputi is referring to and discussed it with her.  This document is neither a log nor a diary.  Rather it is a narrative Ms. Caputi created at the request of her prior attorney, Alexandra Robbins, to aid Ms. Robbins in drafting the complaint.  As such, this document is clearly protected from disclosure under the attorney-client privilege.

Def.'s Ltr. Mtn, Ex. "C" (May 1, 2015 e-mail correspondence).  Following additional discourse on this issue, Plaintiff's attorney again wrote to defense counsel on May 13, 2015, stating, in relevant part:

> I have spoken with Alexandra Robbins, who tells me she instructed Ms. Caputi to create the notebook.  Ms. Caputi likewise tells me that the notebook in my possession at issue was created for, and at the behest of, counsel.  Ms. Caputi further states that the materials she maintained at the advice of her boyfriend were lost during Hurricane Sandy.

Def.'s Ltr. Mtn., Ex. "D" (May 13, 2015 e-mail correspondence).  Consistent with this explanation, which Caputi admits is inconsistent with her deposition testimony, she states in opposition to Defendants' motion that the diary she kept at the suggestion

---

[1] As noted above, the documents forming the basis of this motion are variously characterized by the parties as a diary, journal, notebook, log, and other things.  To avoid confusion, the Court hereinafter refers to that document or documents as the "Notebook." This is consistent with Caputi's testimony that the item at issue was a black and white composition book.  *See* Def.'s Ltr. Mtn., Ex. "A", at 12-13.

of her boyfriend is "completely separate from the Notebook at issue on this motion." Pl. Ltr. Opp. [38], at 2.  And, Plaintiff states that the prior diary was destroyed during Hurricane Sandy.  *See id.*  Based upon this explanation, Plaintiff did not agree to produce the Notebook.  The instant motion principally seeks to compel its production, and related relief.

### D.   <u>Plaintiff's Declaration</u>

In opposition to Defendants' motion, Plaintiff also provides a sworn declaration.  *See* Pl. Ltr. Opp., Ex. "A" (May 19, 2015 declaration of Doreen Caputi ("Pl. Decl.")), DE [38-1].  In it, Caputi states that she previously kept a diary, but it was destroyed by Hurricane Sandy.  *See id.* ¶¶ 4-5.  Caputi continues that she has not kept a diary, log, journal or similar document since losing that one.  *See id.* ¶ 5. Plaintiff states that prior to filing the Complaint in this action, her former attorney, Alexandra Robbins, "asked [her] to summarize certain information in writing." *Id.* ¶¶ 7-8.  Caputi claims to have complied with this request and "prepared a narrative in a notebook and submitted the notebook to her [Ms. Robbins]."  *Id.* ¶ 9. Plaintiff states that at her deposition, she "testified that [she] had submitted the above-stated notebook to [her] attorneys.  [She] did not intend to testify that [she] gave [her] attorneys a diary, journal, or any notebook other than the one discussed above.  To the extent [her] deposition implies that [she] submitted such documents to [her] attorneys, this is due to confusion or misunderstanding of the question asked."  *Id.* ¶ 14.

Plaintiff proposes that, to the degree the Court is not persuaded by her declaration, an *in camera* inspection of the notebook be conducted to determine whether or not it "was written for counsel" and therefore privileged.  Pl. Ltr. Opp. at 2.  In that regard, Plaintiff contends "certain language and other elements in the [n]otebook make it clear that it is not a diary" and "was not kept contemporaneously with the events recorded."  *Id.*

## E.   Defendants' Need for an Additional Deposition

In light of the events outlined above, Defendants argue that they require an opportunity to further depose Caputi, regardless of how the Court resolves the instant motion.  Specifically, if the Court grants the motion to compel production of the Notebook, "Defendants need to question [Caputi] about the content" thereof. Def.'s Ltr. Mtn. at 3.  If not, Defendants nonetheless "need to question her about her inconsistencies."  *Id.*  In addition, Defendants claim the need to depose Plaintiff on other topics as well, including: (i) documents on Caputi's home computer about which she testified at her deposition but which were never produced; and (ii) documents relating to Plaintiff's efforts to mitigate her damages, "such as job postings and interviews," also about which she testified at deposition but which were never produced.  *See id.*

Plaintiff argues that these stated purposes do not warrant an additional deposition.  Specifically, Caputi argues that her personal computer was destroyed by Hurricane Sandy and, as a result, the documents referenced during her deposition no longer exist.  *See* Pl. Ltr. Opp. at 3.  In addition, any documents

relating to Plaintiff's mitigation of her damages were also produced to Defendants and "have only marginal relevance to the instant case," thus not warranting a continuance of Caputi's deposition.

## F.   **Defendants' Other Claims**

Defendants make several additional requests.  First, at her deposition Caputi executed authorizations for access to medical records relating to her allegations of emotional distress.   Defendants claim that the authorizations extend only to "doctors who treated her for emotional distress due to her termination," but that "Plaintiff testified that she lost her home in Hurricane Sandy, was displaced for a while, and that she has always had anxiety."   Def.'s Ltr. Mtn. at 3.  Thus, Defendants argue that they "are entitled to view her medical records for treatment she received prior to her termination in order to ascertain whether her anxiety is the result of some factor other than her termination."  *Id*.

Plaintiff opposes the request, specifically pointing to portions of her deposition testimony wherein she testified that she has never been diagnosed with a mental illness, that she has never seen any doctors or therapists for emotional distress, that she has never been prescribed medication for emotional distress, and that she has only previously experienced anxiety about traveling.  *See* May 19, 2015 Declaration of Samuel Veytsman ("Veytsman Decl."), Ex. "1" (Relevant portions of deposition of Doreen Caputi), DE [38-1], at 8:23-25; 15:10-16:5; 240:18-20; 241:15-242:3; 243:7-9; 244:11-13.  Thus, Caputi contends there are no medical records predating her termination which are relevant to the claims and defenses in this

action.  Further, Plaintiff admitted to testifying that she "broke down" emotionally to three doctors and spoke to them about her emotional distress, despite visiting with them for physical ailments.  *See id*. at 242:2-244:10.  However, these are the doctors whose records Plaintiff authorized Defendants to access at her deposition. *See* Pl. Ltr. Opp. at 2-3.

Finally, Defendants argue that they are entitled to costs and attorneys' fees incurred in making this motion, which was occasioned "only by Plaintiff's and/or her attorneys' failure to produce relevant documents."  Def.'s Ltr. Mtn. at 3.  In addition, Defendants argue that, in the event the Court permits an additional deposition of Caputi, she should have to bear the cost of a stenographer and any costs and attorneys' fees Defendants incur in taking it.  *See id*.  Plaintiff does not directly address these arguments.

## II.    Legal Standards

Defendants may discover relevant, non-privileged information which appears reasonably calculated to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).

In addition, "unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."  Fed. R. Civ. P. 30(d)(1).  However, "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."  *Id*.  " '[A] party seeking a court order to extend the time for examination or otherwise alter the limitations is expected to show good cause to

justify such an order.' " *Carmody v. Vill. of Rockville Ctr.*, 05-cv-4907, 2007 U.S. Dist. LEXIS 54736, at *7 (E.D.N.Y. July 27, 2007) (quoting *Calderon v. Symeon*, 06-1130, 2007 U.S. Dist. LEXIS 20510, at *3 (D. Conn. Feb. 2, 2007)).   "[T]he decision whether or not to enlarge the time for examination of a deponent is a factual decision, depending on the circumstances of the individual case." *Id.* at *8-*9.

## III.   Discussion

At the outset, the Court notes that neither party cited a single case or statute in support of any of their positions here.   Nonetheless, applying the standards outlined above, the Court grants in part and denies in part the instant motion.

### A.    **Motion to Compel the Notebook**

As noted above, the primary objection raised by Plaintiff to producing the Notebook is that its contents are protected from disclosure by the attorney-client privilege.   "The privilege is designed to 'encourage full and frank communication between attorneys and their clients.' " *Wultz v. Bank of China*, 979 F. Supp. 2d 479, 487 (S.D.N.Y. 2013) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677 (1981)).   To that end, "[t]he privilege serves the dual purpose of shielding 'from discovery advice given by the attorney as well as communications from the client to the attorney, made in pursuit of or in facilitation of the provision of legal services.' " *Id.*   " 'It is well-settled that the burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.' " *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (brackets omitted)).   To do so, the party invoking the privilege must show that:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (quoting *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962)).

Where questions of the privilege's applicability arise, *in camera* review is " 'a practice both long-standing and routine' " for resolving them.  *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 09-cv-3312, 2013 U.S. Dist. LEXIS 55726, at *11 (E.D.N.Y. Apr. 16, 2013) (quoting *In re Grand Jury Subpoenas*, 318 F.3d 379, 386-87 (2d Cir. 2003) (collecting cases)).

Here, assuming Plaintiff's position on the instant motion is to be credited, there can be no question that the Notebook falls squarely within the parameters of the privilege and is outside the realm of discoverable material.  Accepting Plaintiff's explanation, it is clear that the contents of the Notebook constitute a communication from a client to her attorney in connection with the attorney's provision of legal services and assistance in this proceeding.

However, the true root of this dispute does not arise from the applicability of the privilege to Caputi's explanation—it stems from the veracity of that explanation, which is inconsistent with Caputi's deposition testimony on this subject, was only offered after such testimony was given, and was presented in an affidavit without being subjected to cross-examination.  In fact, based solely on

Caputi's deposition testimony, the Court discerns no basis for implicating the attorney-client privilege, as she unequivocally testified that she began creating and maintaining the Notebook at the request of her boyfriend, a police officer, and subsequently provided it to her attorney.  In that regard, there was no mention whatsoever of a "second notebook" that was lost in Hurricane Sandy.  Nor was there any mention of a request by counsel that Caputi create a narrative to aid her in drafting the Complaint.  While this incongruity may, as Plaintiff contends, be the result of her legitimate confusion, which she is entitled to correct, it may also be, as Defendants contend, a fabrication designed to avoid discovery obligations.  If it is the latter, the Notebook must be produced, as Plaintiff does not deny that the chronology of events forming the basis of this lawsuit and related information, which she testified are contained therein, are reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, the Court finds it appropriate under these circumstances to conduct an *in camera* review of the Notebook, with Caputi bearing the burden of proving that it is a privileged communication with counsel.  *See Weil Ceramics & Glass, Inc. v. Work.*, 110 F.R.D. 500 (E.D.N.Y. Feb. 19, 1986) ("[I]n an *in camera* review, the party asserting the privilege bears the burden of proof").  The motion to compel is therefore granted in part and Caputi shall, no later than June 12, 2015, submit a complete copy of the Notebook in hard copy to the Court, together with a cover letter which alone shall be electronically filed on the docket.  The Court will then conduct its *in camera* review and issue findings to all parties.  *See Parisi v.*

*Rochester Cardiothoracic Assocs.*, 159 F.R.D. 406, 407 (W.D.N.Y. 1995) (describing appropriate procedure for *in camera* review).

**B.**   <u>**Motion to Compel Additional Medical Records**</u>

The motion to compel authorization to access medical records predating Caputi's termination is denied.  Plaintiff's deposition testimony on this issue, the veracity of which Defendants do not attack, makes clear that Plaintiff admits she never sought treatment for emotional distress, was never diagnosed with any mental illness, and was never prescribed any medication for symptoms of emotional distress.  Defendants provide no evidence to the contrary.  Rather, they argue only that Caputi's testimony revealed that she has "always had anxiety."  Def.'s Ltr. Mtn. at 3.  However, this is a mischaracterization—Caputi testified that traveling, and driving in particular, has "always" caused her anxiety.  This admission does not bear on any of the issues in this case and cannot form the basis for compelling the production of Plaintiff's confidential medical information.  This is particularly so in light of the undisputed fact that Plaintiff already agreed to provide authorizations for access to the records of the three physicians that treated her for purely physical ailments, but to whom she happened to confide details of her emotional distress. Accordingly, the motion to compel access to additional medical records is denied.

**C.**   <u>**Continuance of Plaintiff's Deposition**</u>

The branch of the motion seeking to continue Caputi's deposition is granted in part.  Regardless of the outcome of the Court's *in camera* review of the Notebook, Defendants have shown good cause for requiring Plaintiff to submit to a second

deposition on that topic.  The undisputed record before the Court indicates that Caputi singlehandedly, and through no fault of Defendants, called the veracity of her prior deposition testimony into question by subsequently changing material portions of her story.  If the Court's *in camera* review results in the production of the Notebook, Defendants are entitled to question Plaintiff about its contents.  And, if the Court finds the contents of the Notebook privileged and does not order its production, Defendants are nonetheless entitled to inquire into Plaintiff's new version of material facts—*i.e.*, the creation of a diary that was destroyed by the hurricane, and the subsequent creation of a second notebook at the request of counsel—which were only advanced after her first deposition concluded, and in the form of an affidavit not subject to cross-examination.

The Court also finds that Defendants have shown good cause for continuing Plaintiff's deposition on the issue of her efforts to mitigate damages.  Specifically, Caputi attaches to her opposition 24 pages of documentation that she admits concern mitigation of damages, *see* Veytsman Decl. ¶ 13, DE [38-1], were not produced with other pertinent documents earlier in discovery.  *See* Pl. Ltr. Opp. at 3 ("The only materials Plaintiff has *that had not previously been produced* and which arguably reflect mitigations are a handful of documents noting positions Plaintiff applied for but did not obtain" (emphasis supplied)).  The Court's review of the documentation provided on this motion—after Caputi's deposition—reveals earnings statements, handwritten notes, electronic confirmations of job application submissions, and responses thereto.  *See* Veytsman Decl., Ex. "B".  While Caputi

contends that these documents have "only marginal relevance," her opinion in that regard is insufficient, without more, to excuse her failure to produce them prior to the deposition and to deprive Defendants a fair opportunity to question her about them.  Accordingly, the motion to compel the continued deposition of Caputi on the topic of mitigation of damages is granted, but only to the degree that such continued questioning relate to the documents annexed to the Veytsman Declaration as Exhibit "B".

Finally, the Court finds that Defendants have not shown good cause for a continued deposition relating to the alleged files maintained on Caputi's home computer.  Specifically, Plaintiff states that the personal computer referenced in her deposition was destroyed, only certain e-mails were preserved, and any responsive ones were already produced.  Defendants fail to present facts to the contrary, or even indicate what information they seek to elicit on that topic.  Accordingly, the motion is granted in part as to the continuance of Plaintiff's deposition.  Because the scope of the continued deposition is limited only to the issue of the Notebook— *e.g.*, the circumstances surrounding the existence, creation, maintenance, destruction, and content of the Notebook and any prior diaries, journals, logs, notebooks, or other documentation referenced in Caputi's letter motion—and the documents concerning mitigation of damages that were produced after Plaintiff's first deposition, it shall not exceed three hours in length.  The scheduling of the continued deposition may be deferred until after the Court's *in camera* review of the Notebook is complete.

**D.**   **Costs and Attorneys' Fees**

Finally, Defendants seek an award of costs and attorneys' fees incurred in making this motion.  However, Defendants advance no substantive argument in this regard and, as noted above, do not cite any legal authority whatsoever that would entitle them to such an award.

Furthermore, again without any citation to applicable authority, Defendants seek to impose upon Caputi the obligation to pay the fee charged by a stenographer at her continued deposition, as well as any costs and attorneys' fees Defendants incur by taking it.  While Fed. R. Civ. P. 30(d)(2) confers discretion on the Court to impose a sanction, including reasonable expenses and attorneys' fees, on any person who impedes, delays, or frustrates the fair examination of a deponent, the Court finds no basis for doing so here.

Defendants argue that such a sanction is warranted due to Plaintiff's failure to produce relevant documents during discovery.  However, as set forth above, Caputi has asserted a colorable basis for objecting to the production of the Notebook, which this Court may, following an *in camera* inspection, uphold. Plaintiff's failure to produce arguably privileged documents, prior to the Court's ruling on that issue, cannot be construed as improperly impeding, delaying, or frustrating a fair examination of her, and Defendants have provided no material argument to the contrary.  Accordingly, the motion is denied as to Defendants' request for costs, attorneys' fees, and stenographer's fees.

## IV.    Conclusion

Based on the foregoing, Defendants' motion to compel is granted in part and denied in part, as follows: (i) the request to compel the production of the Notebook is granted in part and Plaintiff shall, no later than June 12, 2015, submit a complete hard copy to the Court for the purpose of conducting an *in camera* review; (ii) the request to compel authorizations to access medical records predating Caputi's termination is denied; (iii) the request to continue the deposition of Caputi is granted in part, on condition that it not exceed three hours in length and be limited in scope to (a) the circumstances surrounding, and Caputi's testimony concerning, the Notebook, as well as (b) the documentation concerning mitigation of damages that was produced subsequent to Caputi's first deposition; (iv) the request for costs and attorneys' fees in making the instant motion is denied; and (v) the request that Caputi be required to pay the stenographer's fees at her continued deposition, as well as any costs and attorneys' fees Defendants incur in taking it is denied.

Dated:      Central Islip, New York
            May 22, 2015                        **SO ORDERED**

                                                s/ Steven I. Locke
                                                STEVEN I. LOCKE
                                                United States Magistrate Judge

16